Booth, Chief Justice,
delivered the opinion of the court:
The Post Office Department solicited bids for the erection of a building suitable for occupancy as a post office in Boston, Massachusetts. The building was to be erected upon a plot of ground which the Postmaster General had an option to purchase, and it was to be constructed in accord with plans and specifications furnished by the Department. The enterprise contemplated the construction of the building and its occupancy under a lease by the Department for a post office.
Plaintiff’s predecessor in title constructed the building and when finished it was approved and accepted as in compliance with the plans and specifications furnished the builder. Among the detail plans was one calling for a specified lighting system, and it w,as installed in the building and thereafter accepted and approved as meeting the plans and specifications for its installation.
Subsequent to the completion of the building the Post Office Department entered into occupancy under the terms of a written lease, standard form, executed by the parties on January 26,1927. This lease specifies not only the rental to be paid for the building, but in addition contains express stipulations covering an option to purchase it within a specified time, and other provisions covering contingencies *177 which might arise during the Department’s tenancy. Paragraph 6 of the lease provides as follows:
“ The lessor shall furnish to the Government, during the occupancy of said premises, under the terms of this lease, as part of the rental consideration, the following: The lessor shall pay all taxes and shall have this lease duly recorded, and shall protect all windows and doors in the workroom by steel sash according to requirements. The lessor shall furnish satisfactory heating and lighting fixtures; satisfactory plumbing and necessary toilet facilities. The lessor shall keep the said heating and lighting fixtures and plumbing in good repair and condition during the term of this lease.”
No fault has ever been found by the Department with the lighting system as installed by the builder under the plans and specifications furnished it. Later on, however, after the building had been occupied for some sixteen months, and following a change and relocation of the furniture and desks in the building to facilitate operating procedure, it was discovered that additions to the existing lighting system were essential.
The Department notified the lessor of this fact, supplied it with detail plans and estimated costs of installing the same, and requested that the additions be made at once by it. The lessor declined to make the additions, predicating the refusal upon a legal immunity derived from the terms of the plans and specifications for the construction of the building, and the fact that a lighting system had been installed, approved, and accepted as in strict compliance therewith. Plaintiff was then notified by the defendant that a positive refusal to make the additions would result in the Department advertising for bids to do the work and charging the cost thereof against accrued or accruing installments of rental clue the lessor. The plaintiff absolutely declined to make the additions. The defendant did make them and thereafter there was deducted from plaintiff’s rental the cost thereof, i.e., $2,424.51 (finding XI), and it is for this amount the plaintiff sues.
The facts, not in dispute, disclose a transaction severable into two parts. First: The plaintiff was to construct a building designed and intended for occupancy as a post *178 office. Obviously, the building was to meet the peculiar necessities of the Department, and plans were furnished the plaintiff enabling it to obtain this purpose, i.e., the primary purpose of bringing into existence a building which the Department would lease from it. Second: The plaintiff ' accomplished the primary purpose, but there yet remained the execution of a contract of tenancy, an instrument setting forth the terms and conditions with respect to occupancy, agreement as to the rental to be paid, time limit as to occupancy (in this case, ten years), option to purchase, and additional provisions as to repairs, alterations, and mutual liabilities and rights in the event of the destruction or injury of the building by fire.
Paragraph 6 was designedly inserted in the lease. We say this because the paragraph appears therein in typewriting and its contents could not have been misapprehended. The plaintiff knew that a written lease was an indispensable step in the procedure creating the relationship of landlord and tenant, and manifestly, knowledge is to be imputed to it that the lease fixed the rights of the parties thereunder, and not the plans and specifications for the construction of a building to be thereafter leased.
The plaintiff’s argument is addressed to a familiar principle of law, that in cases where parties enter into a written contract in pursuance and acceptance of written proposals setting forth the undertaking in detail the contract is to be construed in the light of and as a reduction to writing of the terms set forth in the proposals. Many cases sustaining the rule, which we need not review, are cited. This case, we think, does not fall within the rule. While it is true the plaintiff occupies the role of “ building contractor and lessor ”, nevertheless the transaction was not in itself an indivisible entity. Under existing law the undertaking exacted two contracts, the first to be faithfully executed prior to the execution of the second, and it is v/nder- the second that this cause of action arises. The defendant’s obligation under the first was to enter into a lease of the building after its satisfactory completion. The first proposal did not fix the terms of the lease to be thereafter agreed upon.
*179 The plaintiff upon the record may not relieve itself of its assumed obligations under a ten-year lease by a contention that the plans and specifications for a building to be leased determine the relationship of landlord and tenant under the separate lease. The mere fact that the plans and specifications dealt expressly with the same subject matter in some respects is not determinable of the issue. In the first instance the lighting system was a constructional detail. In the second place, it was a matter of meeting satisfactorily the necessities of the tenant with respect to lighting during the tenancy.
Paragraph 6 imposed upon the lessor the duty of furnishing “ satisfactory lighting fixtures.” What was exacted of the plaintiff was not a change in the lighting system originally installed, but the installation of desk lights, i.e., fixtures, to take the place of the defendant’s improvised ones which tended to obscure the vision of the office employees. It is true, and the findings so show, that in the beginning the question as to whether the new lamps would serve the needed purpose was more or less experimental, but we find nothing in the record which in any way sustains a finding that the additions called for were not essential to the exigencies of the service, or that in ordering them the defendant acted capriciously, unreasonably, arbitrarily, and without regard to the necessities of the service. It is certain that the reason for ordering the additional lights was because of an unsatisfactory condition then existing, and even if in the beginning their installation was experimental to the extent of a doubt as to their furnishing the needed light, nevertheless subsequent to their installation this doubt was dispelled and the additions, we must assume from the record, satisfactory.
The plaintiff was aware that it was leasing a completed building for a post office, a branch of governmental activity that exacts its own peculiar accommodations, subject to alteration and change with the corresponding fluctuations in the public service furnished. Paragraph 6 anticipated in part at least the happening of such events, and was made a part of the lease for that especial purpose. The lease was *180 duly signed by the plaintiff and no complaint is now made as to any part oí the transaction, save that it was not chargeable with the amount expended.
We think the petition should be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Green, Judge, concur.